# EXHIBIT 1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and General Release (the "Agreement") is entered into by and between Lucienne Esperance ("Employee") and Dollar Tree Stores, Inc. ("Employer") (Employee and Employer are collectively referred to herein as the "parties") as of the Effective Date stated below.

WHEREAS, Employee was employed by Employer at a Dollar Tree store located in Parkland, Florida (Store No. 5698);

WHEREAS, Employee's employment with Employer ended on or about October 17, 2014 (the "Termination");

WHEREAS, on or about January 2, 2015, Employee filed a lawsuit styled as *Lucienne Esperance v. Dollar Tree Stores, Inc.*, Case No. 0:15-cv-60005-WPD, in the United States District Court for the Southern District of Florida, related to her employment with Employer (the "Lawsuit");

WHEREAS, to avoid the possible future costs, burdens, or distractions of litigation, the Employee and Employer now desire and, through the execution of this Agreement, intend to dispose of and resolve fully and completely any and all disputes, causes of action, claims, issues, and/or differences between Employee and Employer, including, but not limited to, those which have arisen, could have arisen out of, and/or are in any way related to the Charge and/or Employee's employment with Employer, the Termination, and any and all matters that might arise between Employee and Employer as a result of any act that has heretofore occurred.

NOW THEREFORE, in consideration of the mutual promises and covenants set forth below, the parties agree as follows:

1. **Recitals.** The parties acknowledge that the "WHEREAS" clauses preceding Paragraph 1 are true and correct, and are incorporated herein as material parts to this Agreement.

2. **Consideration.** In exchange for the promises made by Employee in this Agreement, Employer agrees to pay the total sum of TWO THOUSAND THREE HUNDRED EIGHTY EIGHT DOLLARS AND ZERO CENTS ($2,388.00), allocated as follows:

   a. Employer shall issue payment in the amount of TWO HUNDRED FIFTY SIX DOLLARS AND ZERO CENTS ($256.00), subject to applicable withholdings and deductions, made payable to "Lucienne Esperance," in compensation for back wages. Employer will issue to Employee an IRS Form W-2 in connection with this payment.

   b. Employer shall issue payment in the amount of TWO HUNDRED THIRTY TWO DOLLARS AND ZERO CENTS ($232.00), made payable to "Lucienne Esperance," in compensation for sums other than back wages. Employer will issue to Employee an IRS Form 1099 in connection with this payment. Employee agrees she is solely responsible for any applicable taxes, penalties, interest, or other amounts due on the payment described above, and shall indemnify Employer and/or its respective successors, assigns, parents, subsidiaries, divisions, affiliates, insurers, officers, directors, trustees, governors, associates,

agents and representatives and hold it/them harmless for any taxes, penalties, or interest she becomes required to pay related to the payment described herein.

c. Employer shall issue payment in the amount of ONE THOUSAND NINE HUNDRED DOLLARS AND ZERO CENTS ($1,900.00), made payable to Loren & Associates, P.A." tax identification number 65-1028576, in compensation for attorney's fees and costs. Employer will issue to Loren & Associates, P.A. an IRS Form 1099 in connection with this payment.

d. Employer shall deliver the above-referenced checks to counsel for Employee within ten (10) business days of the last to occur of the following: (a) Employer's counsel has received a copy of this Agreement bearing the original signature of Employee; (b) Employer's counsel has received a copy of an IRS W-9 tax form signed by Employee and a copy of an IRS W-9 tax form signed by counsel for Employee; (c) Employee's time to revoke acceptance of this Agreement has expired and she has not exercised the revocation option described herein; and (d) Employer's counsel has received authorization to file a stipulation of dismissal of the Lawsuit, with prejudice.

e. Employer's counsel shall hold the above-referenced checks in escrow until the Court in the Lawsuit issues an Order dismissing the case, with prejudice. If the Court in the Lawsuit requires the parties to file a motion for approval of this Agreement, then the parties agree to submit a Joint Motion to Approve Settlement and for Dismissal, with prejudice. In such an instance, Employer's counsel shall hold the above-reference checks in escrow until the Court in the Lawsuit issues an Order approving this Agreement and dismissing the case, with prejudice.

3. No Consideration Absent Execution of this Agreement. Employee understands and agrees that the payment described above in Paragraph 2 would not be provided except for Employee's execution of this Agreement and the fulfillment of the promises contained in this Agreement. The payment reflected in Paragraph 2 is made in full and final settlement and resolution of any cause of action Employee has against Employer.

4. Affirmations.

a. Employee represents that other than the Lawsuit, no claim, charge, complaint or action exists against the Employer or Releasees (as defined in Paragraph 5 hereof) in any forum.

b. Employee affirms that she has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave to which she may be entitled under state or federal law.

5. Release of Employer by Employee. In exchange for the consideration provided, except as expressly provided below, Employee releases, relinquishes, and gives up (and agrees not to file any suit with respect to) any and all claims, suits, causes of action, known or unknown, which Employee may have or hold against any or all of Employer and Employer's owners, shareholders, employees, officers, directors, assigns, parent, predecessors and successors, present and former affiliates, subsidiaries, legal representatives and agents (collectively, the "Releasees")

2

of and from all actions, causes of action, suits, debts, dues, sums of money, damages, judgments, executions, claims and demands whatsoever, whether individual or collective, in law or in equity, known or unknown, foreseen or unforeseen which Employee ever had, now has or which she or her heirs, executors, personal or legal representatives, administrators, successors or assigns hereafter shall, can or may have from the beginning of the world to the Employee's execution of this Agreement. The foregoing release includes, but is not limited to, any and all claims alleged in the Charge as well as any and all claims in any way arising out of, relating to or resulting from (a) Employee's employment with Employer or her Termination from employment; (b) the Charge; (c) any fact, statement, or conduct made on or occurring prior to the Employee's execution of this Agreement; (d) any employment or business custom, practice or policy of Employer, and/or (e) any conduct or decision of Employer which has in any way affected Employee or discussions leading up to and/or culminating in this Agreement.

This release includes, but is not limited to, a release of any and all rights Employee has to sue or bring any type of claim for discrimination and other violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, the Employment Act of 1967, the Civil Rights Act of 1991, the Civil Rights Act of 1866 and 1870, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, the Florida Civil Rights Act – Fla. Stat. §760.01, *et seq.*, the Florida Whistleblower Act – Fla. Stat., §448.101, *et seq.*, the Florida Workers' Compensation Act, Fla. Stat., § 440.01, *et seq.*, the Civil Rights Act of 1966, as amended, 42 U.S.C. § 1981, as amended, Executive Order 11246, the Americans with Disabilities Act 42 U.S.C. § 12101, *et. seq*, as amended, the Family and Medical Leave Act, as amended, the Equal Pay Act of 1963, as amended, the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.*, the Florida Minimum Wage Act – Fla. Stat., § 448.110 and Article X, Section 24 of the Florida Constitution, any and all Florida Wage Payment Laws, including, but not limited to Fla. Stat., § 448.08, the Immigration and Reform Control Act, as amended, and any other state, federal, and local law, regulation and ordinance dealing with discrimination in employment, disability, wrongful discharge, and retaliation for exercising any right or participating or engaging in any activity, (c) the Occupational Safety and Health Act, as amended, the Sarbanes-Oxley Act of 2002, as amended, the Employment Retirement Income Security Act of 1974, as amended (except vested benefits), the Worker Adjustment and Benefit Protection Act of 1990, as amended, the Older Workers Benefit Protection Act of 1990, as amended, the Worker Adjustment and Retraining Notification Act, as amended, (e) for any federal, state or common law claim or cause of action for breach of contract, wrongful discharge, constructive discharge, retaliation, defamation, slander, liable, intentional or negligent infliction of emotional distress, misrepresentation, fraud, promissory estoppel, any other tort or negligence claim, or obligations arising out of any of Employer's employment policies or practices, employee handbooks and/or any statements by any employee or agent of Employer whether oral or written; and (f) for reinstatement, back pay, bonus, attorneys' fees, compensatory damages, costs, front pay, any form of equitable or declaratory relief, liquidated damages, emotional distress, personal injury, punitive damages, pain and suffering, medical expenses, damage to reputation, damage for personal, emotional or economic injury or damage of any kind.

This release does not release any claims the law does not permit Employee to release. Nothing in this Agreement shall be construed to prohibit Employee from enforcing this Agreement or from filing a charge with the U.S. Equal Employment Opportunity Commission, Florida Commission on Human Rights and Opportunities, local human rights agency or the

3

National Labor Relations Board, or from participating in any investigation or proceeding conducted by these agencies. Notwithstanding the foregoing, Employee agrees to waive her right to recover monetary damages in any charge, complaint, or lawsuit filed by Employee or by anyone else on her behalf. Employee assures Employer that as of the date of execution of this Agreement by Employee, Employee is not aware of any fact or circumstance that Employee believes creates any duty or obligation on the part of Employee to report any matter or concern to any governmental agency.

If the release of any claim described herein is found invalid, Employee acknowledges and agrees that such invalidity has no effect on the validity of any other release of claim and that this Agreement shall remain valid and enforceable so long as the release of claim provisions that are found valid and enforceable are acceptable to Employer.

6. **Class or Collective Action Claims.** Employee acknowledges and agrees that included among the claims released are any and all claims that have been, or may be, asserted by her or by any other person or entity on her behalf in any class or collective action relating to the Released Parties including but not limited to Dollar Tree. Consistent with the terms of this Agreement:

   a. Employee waives any right to become, and promises not to consent to become, a member of any class in a case in which claims are asserted against the Released Parties and that involve events which have occurred as of the date Employee signs this Agreement; and

   b. Employee waives any and all rights she might otherwise have to receive notice of any class or collective action. In the event that Employee is included or identified as a member, or potential member of a class in any proceeding against the Released Parties, Employee agrees to opt out of the class at the first opportunity afforded to her after learning of her inclusion. In this regard, Employee agrees that she will execute, without objection or delay, an "opt-out" form presented to her in connection with such proceeding.

7. **Liens or Encumbrances.** Employee warrants and represents that there are no liens or encumbrances on her claims, including but not limited to Workers' Compensation liens, physicians' liens, and/or attorney liens. Employee expressly acknowledges that, in any case, all obligations to satisfy such liens are the sole responsibility of Employee, and not of Employer. Employee also agrees that if any liens or encumbrances on her claims should arise between the date she signs the Agreement and the date on which the funds identified in Paragraph 2 of this Agreement are paid and Employer is required by law to pay such lien or encumbrances, Employer's payment of the lien or encumbrance shall act as an offset to Employer's obligations to Employee set forth herein.

8. **Denial of Liability.** It is expressly understood and agreed to by and among the parties hereto that by entering into this Agreement, Employer and Employee do not admit the truth of the allegations made in the Charge, and this is a resolution of disputed claims which should not be construed as an admission of liability on the part of any party. Employer expressly denies any wrongdoing or liability to the Employee.

9. **Review of the Agreement.** Employee acknowledges that she has carefully read this Agreement and understands all of its terms, and that she signs it voluntarily with full knowledge of its significance after adequate opportunity for consideration and consultation with an attorney/advisor. Employee represents that no payments or consideration have been promised to her for executing or delivering this Agreement other than those described herein, and that the payment and benefit described herein shall constitute the entire amount of consideration provided to her under the Agreement. Employee acknowledges that this amount constitutes adequate and sufficient consideration for the claims released herein and any other promises made under this Agreement. The recitals stated above are incorporated herein by reference. The parties have each received or had the opportunity to receive independent legal advice from attorney(s) of their choice with respect to the preparation, review and advisability of executing this Agreement. Employee has consulted with counsel of her choice, Employee, prior to execution of this Agreement. The parties acknowledge that they have executed this Agreement after independent investigation and without fraud, duress or undue influence.

10. **No Re-Employment.** Employee agrees that she will not apply for or seek re-employment with any of the Releasees (as defined in Paragraph 5 herein). The Releasees have the right to refuse to re-employ Employee without liability.

11. **Employment Reference.** Employer has partnered with TALX to provide an automated employment income verification service known as "The Work Number" at 1-800-367-5690 or www.theworknumber.com. Dollar Tree's employer code for TALX is 13180. Dollar Tree does not permit field personnel to give out any former or current associate's personal information or work history, including employment verification. Employees shall refer any potential employers to this Work Number for all job verification and references related to their employ with Dollar Tree.

12. **All Compensation Paid.** Employee agrees and acknowledges that she has been paid for all hours worked and all services provided as an employee of the Employer, including without limitation, all compensation, bonuses, and expenses.

13. **Assigns and Successors-in-Interest.** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, and assigns of the parties hereto.

14. **Confidentiality.** Employee agrees to keep the terms and conditions of this Agreement and the payment of the settlement proceeds in accordance with this Agreement confidential and he will not disclose to any other person other than Employee's spouse, attorney, or tax advisor (collectively, a "Disclosed Party"). Employee shall advise any Disclosed Party that this Agreement is confidential and the Disclosed Party shall not disclose any information that Employee conveys to the Disclosed Party about the Agreement or the Charge. If asked about the terms of this Agreement, the Employee and any Disclosed Party shall state that the claim has been resolved to the satisfaction of the parties.

15. **Non-Disparagement.** The parties agrees that after the date of this Agreement, they will not disparage or denigrate each other orally or in writing to any third party, any web or Internet site, newspaper, or media source of any type.

16. <u>Applicable Law</u>. The existence, validity, construction, and operation of this Agreement, and all of its covenants, agreements, representations, warranties, terms, and conditions shall be determined in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law.

17. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties, and fully supersedes all prior and/or contemporaneous agreements or understandings between the parties which pertain to the subject matter hereof. The terms of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement and no extrinsic evidence whatsoever may be introduced to vary its terms in any judicial proceeding involving this Agreement.

18. <u>Modification</u>. This Agreement may be modified, but only if the modification is in writing and signed by all parties to this Agreement.

19. <u>Severability</u>. Should any provision of this Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Agreement.

20. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

21. <u>Joint Effort</u>. The parties stipulate that this Agreement was prepared by and is the joint effort of the parties through negotiations. Accordingly, any ambiguity, uncertainty or vagueness in the construction and interpretation of this Agreement shall not be attributed to either Employee or Employer, and the theory of construction that a document should be construed against the party drafting the document is waived and will not be applied in construing this Agreement.

22. <u>Review and Consultation</u>. Employee acknowledges that: (a) this Agreement is written in terms and sets forth conditions in a manner which she understands; (b) she has carefully read and understands all of the terms and conditions of this Agreement; (c) she agrees with the terms and conditions of this Agreement; and (d) she enters into this Agreement knowingly and voluntarily. Employee acknowledges that she does not waive rights or claims that may arise after the date this Agreement is executed, that she has been given twenty-one (21) days from receipt of this Agreement in which to consider whether she wanted to sign it, that any modifications, material or otherwise made to this Agreement do not restart or affect in any manner the original twenty-one (21) day consideration period, that Employer advises Employee to consult with an attorney of the Employee's choice before Employee signs this Agreement, and that she was given the opportunity to consult with, and did consult with, an attorney prior to executing this Agreement. Employer agrees, and Employee represents that she understands, that Employee may revoke his acceptance of this Agreement at any time for seven (7) days following her execution of the Agreement and must provide notice of such revocation by giving written notice to the Employer by noon EDT on the eighth (8th) day after the execution of this Agreement. If Employee chooses to revoke her acceptance of this Agreement, she will give such

6

notice to counsel for Employer at the following address: Dollar Tree, Inc., Attention: Amy Morrissey Turk (Assistant General Counsel, Employment), 500 Volvo Parkway, Chesapeake, Virginia 23320. If not revoked by written notice received by the Employer on or before noon EDT the eighth (8th) day following the date of her execution of the Agreement, this Agreement shall be deemed to have become enforceable and effective at 12:01 a.m., Eastern Standard Time (the "Effective Date") on such eighth (8th) day.

\*   \*   \*

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed this Agreement as of the date stated below.

Agreed to and accepted by:

_____  _____1/15/15_____
Lucienne Esperance                Date

STATE OF FLORIDA     )
                     )  ss.: _____, _____
COUNTY OF BROWARD    )

On __1/15/15__, before me personally appeared Lucienne Esperance, known to me to be the individual described herein, who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that she executed the same as her free act and deed.

Sworn to before me on this 15 day of JANUARY, 2015.

_____
Notary Public/Commissioner

MARCELLE BECKFORD
Notary Public - State of Florida
My Comm. Expires Jul 5, 2018
Commission # FF 122283

Agreed to and accepted by:

*Amy Morrissey Turk*       01/21/15
Dollar Tree Stores, Inc.                Date
Name: *Amy Morrissey Turk*
Title: *Assistant General Counsel, Employment*

STATE OF *Virginia*           )
                              ) ss.: _____, _____
COUNTY OF *Chesapeake* )

    On *1-22-15*, before me personally appeared *Amy Turk*, representative of Dollar Tree Stores, Inc., who executed the foregoing Confidential Settlement Agreement and General Release, and duly acknowledged to me that he/she executed the same as his/her free act and deed and the free act and deed of Dollar Tree Stores, Inc.

Sworn to before me on this *22* day of *Jan*, 2015.

*Debra A. Torrence*
Notary Public/Commissioner

Firmwide:131087763.2 999999.2062

8